UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DANIEL SAWYER,

    Petitioner,

                            Case No. 8:11-CV-1224-T-27TGW
                                       8:08-CR-271-T-27TGW
UNITED STATES OF AMERICA,

    Respondent.
_____/

## O R D E R

This cause comes on for consideration of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Title 28 U.S.C. § 2255 (Cv-D-1; CR-D-209), the Government's response in opposition (Cv-D-7), and Petitioner's reply (Cv-D-13).

On June 24, 2008, Petitioner was charged by way of an Indictment with having conspired to possess 500 grams of cocaine with the intent to distribute it in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). Petitioner retained attorney Dennis Boothe to represent him. Two of Petitioner's three co-defendants entered guilty pleas to the charge in the Indictment. The third co-defendant absconded and remains a fugitive. A fourth co-defendant, Henry Guzman, was originally charged in a Criminal Complaint but was never indicted.

On October 1, 2008, the Government filed its Information and

Notice of Prior Convictions (Cr-D-72) notifying Sawyer that he was subject to an increased penalty if convicted in light of two prior drug convictions. On October 9, 2008, Petitioner's counsel filed a motion in limine objecting to the Government's intention to introduce Petitioner's prior drug convictions at trial. The Court denied the motion at a hearing on October 14, 2008.

On October 15, 2008, the trial commenced. In his opening statement, attorney Boothe said the Government could have charged Petitioner with attempting to purchase cocaine or attempting to traffic cocaine but that the evidence would not show Petitioner was a member of any conspiracy. (Cr-D-174, p. 90-91.) During the trial, attorney Boothe objected to co-defendant Garcia's testimony regarding statements made to him by Guzman as hearsay. (Id. at 67, 69-73.) Boothe argued that Guzman was not a co-conspirator as he was not charged with conspiracy and that Garcia had pled to a lesser charge. The Court concluded the testimony was admissible pursuant to Fed.R.Evid. 801(d)(2)(E). (Id. at p. 73.) In closing argument, Boothe argued that the Government had not proven beyond a reasonable doubt that Petitioner was a part of the conspiracy. On October 16, 2008, the jury found Petitioner guilty of Count One of the Indictment.

On January 13, 2009, the Court sentenced Petitioner to a term of imprisonment of 360 months, which was the mandatory minimum term of imprisonment pursuant to 21 U.S.C. §§ 841(b)(1)(B) and 851.

Petitioner appealed. Attorney Boothe was allowed to withdraw, and Petitioner retained new counsel to represent him on appeal. Attorney Boothe passed away on December 31, 2009. On January 15, 2010, the Eleventh Circuit affirmed Petitioner's conviction and sentence. <u>United States v. Sawyer</u>, 361 Fed. App'x. 96 (11th Cir.), <u>cert</u>. <u>denied</u>, 131 S.Ct. 176 (2010).

Petitioner timely filed his § 2255 motion raising various claims of ineffective assistance. Specifically, Petitioner contends that attorney Boothe was ineffective in (1) failing to convey the Government's written plea offer to him; (2) misleading Petitioner into believing he had a valid defense and a 95% chance of acquittal based on the evidence; (3) misadvising Petitioner he was required to cooperate with the Government in order to enter a guilty plea and receive a lesser sentence; (4) failing to prepare himself for trial by reviewing the evidence and applicable law; and (5) misadvising Petitioner that his prior drug convictions would not be used against him at trial.

By order dated August 25, 2011, the Court found that an evidentiary hearing was necessary. Attorney David Hardy was appointed to represent Petitioner at the hearing. As attorney Boothe is deceased, the Court directed the Government to attempt to subpoena for production attorney Boothe's file concerning his representation of Petitioner as well as any witnesses deemed necessary to address the issues raised in Petitioner's motion.

3

Prior to the hearing, the Government advised that it had contacted Boothe's family as well as appellate counsel for Petitioner and that the file had not been located. (Cv-D-15.) On October 19, 2011, the Court held an evidentiary hearing. At the outset, attorney Hardy advised he also had spoken with Boothe's son who had been unable to locate the file.

Monica Elias testified on behalf of Petitioner. Additionally, Petitioner Sawyer testified on his own behalf. The Government did not present any witness testimony or documentary evidence. At the conclusion of the hearing, counsel for Petitioner argued that the totality of the circumstances demonstrated that Boothe's performance was constitutionally deficient.

**TESTIMONY PRESENTED AT THE HEARING**

Monica Elias, Petitioner's sister, testified that she met Boothe through her brother's father and that they hired him to represent Petitioner. Elias explained that the first time she met with Boothe was to give him a payment towards his fee. The second and only other time she met him, Boothe had her listen to an audio tape of the underlying drug transaction. According to Elias, she listened to the audio three times. Elias testified that after she finished listening, attorney Boothe told her that Petitioner's voice was not on the audio and to "tell Daniel he's coming home." She said Boothe told her the prosecution didn't have a case so they were taking the case to trial. Ms. Elias testified that she

4

relayed that information to Petitioner when he called her.

Petitioner Sawyer testified that attorney Boothe told him the Government didn't have a case and that Petitioner had a 95% chance of winning. Petitioner said Boothe told him, "I was going home, don't worry about nothing [sic]." Petitioner testified that Boothe did not review the sentencing guidelines and did not discuss with him his offense level, criminal history level, the fact that he was a career offender or the Government's § 851 notice.

Petitioner also testified that attorney Boothe never explained to him that his prior drug convictions could be introduced against him at trial. He said that had he known that, he would have pled guilty because he would have known the case was "stacked against" him.

While Petitioner admitted there was some discussion about cooperation, he insisted that Boothe told him he did not need to cooperate because he "was going home." Petitioner testified that after Boothe was permitted to withdraw as counsel for purposes of appeal, Boothe sent him some files. Petitioner explained that he found a proposed plea agreement from the Government in the file. Petitioner testified that attorney Boothe never told him about the written plea agreement offered by the Government and never showed it to him. Petitioner further testified that attorney Boothe never discussed a straight up guilty plea. He testified that had he known about the plea offer and the possible sentences if he pled

guilty versus being found guilty after a trial, he would have accepted the plea offer from the Government.

Petitioner testified that he felt he was guilty of attempting to purchase cocaine and that he told Boothe that, "if the case is strong - I asked him how this case was because I'll just plead out. But he kept saying you don't have to plead out because you going home." On cross-examination, Petitioner testified that he did not feel he was guilty of conspiracy because he did not know the other co-defendants charged in the Indictment. On redirect, he explained that Boothe did not explain to him the law of conspiracy. Petitioner testified that he felt Boothe "misled [him] the whole way."

## CREDIBILITY FINDINGS BY THE COURT

After hearing the testimony of Ms. Elias and Petitioner and considering their demeanor and the other evidence of record, the Court credits their testimony.

Ms. Elias was unequivocal that attorney Boothe told her the Government did not have a case and that Petitioner would be "coming home." Her testimony was entirely consistent with Petitioner's repeated testimony that Boothe told him the Government did not have a case and that Petitioner would be acquitted.

Petitioner was also unequivocal in his testimony that Boothe told him he did not need to worry about the case and that he would be going home. He was further unequivocal in his testimony that

6

Boothe did not discuss with him the sentencing guidelines, the career offender provision, the written plea offer from the Government or the significant differences in his possible sentence if he pled guilty versus was found guilty after a trial. Additionally, there is no evidence confirming that Boothe discussed any of these matters with Petitioner.

Petitioner introduced into evidence at the evidentiary hearing a letter dated August 8, 2008, from the Government to attorney Boothe. The letter included a proposed plea agreement, Financial Disclosure Statement, and Individual Declaration as to Payment of Special Assessment Upon Conviction. Under the proposed plea agreement, Petitioner faced a mandatory minimum of 5 years imprisonment and a maximum sentence of 40 years. The proposed plea agreement included a provision for a three-level downward adjustment for acceptance of responsibility. The proposed plea agreement also included a provision that the Government would not oppose a sentence at the low end of the guideline range. (PX 2, p. 6.)

Significantly, the Government's cover letter provided:

> If the plea agreement is acceptable to both you and your client, please return all the foregoing documents to me fully executed no later than August 22, 2008. **In any event, please use the enclosed reply letter in responding to the offer.**

(PX 2, emphasis added.) The proposed reply letter was addressed to AUSA Preston and stated as follows:

>    We are in receipt of and have reviewed the plea agreement for the above-referenced case. Please be advised that:
>
> _____   The signed plea agreement is enclosed for your signature and filing with the court.
>
> _____   The terms of the plea agreement are not acceptable.
>
> Dated this ___ day of _____, 2008.
>
>
> _____          _____
> DANIEL SAWYER                 DENNIS EDWARD BOOTHE, ESQ.

(PX 2, p. 3.) It does not appear that the proposed reply letter was ever executed by Petitioner and his counsel indicating that the plea agreement was not acceptable and returned to the Government. The Court finds this further supports Petitioner's testimony that he was not advised of nor shown the plea agreement.

Having assessed the credibility of the witnesses, the Court now turns to the ineffective assistance of counsel standard.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel require a showing of the two-prong test as set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to succeed under the Strickland test, a movant has the burden of proving: (1) deficient performance by counsel; and (2) prejudice resulting therefrom. Id. at 687.

The first prong of the Strickland test requires the Court to determine whether trial counsel performed below an "objective

standard of reasonableness," while viewing counsel's challenged conduct on the facts of the particular case at the time of counsel's conduct. 466 U.S. at 688, 690. Notably, there is a strong presumption that counsel rendered adequate assistance and made all significant decisions with reasonable and competent judgment. Id.

A counsel's performance is deficient if, given all the circumstances, his or her performance falls outside of accepted professional conduct. Strickland, 466 U.S. at 690. "Judicial scrutiny of counsel's performance must be highly deferential," and "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy." Chandler v. United States, 218 F.3d 1305, 1313-14 (11th Cir.2000) (en banc) (quoting Strickland, 466 U.S. at 689 and Darden v. Wainwright, 477 U.S. 168 (1986)). Rather, for counsel's conduct to be unreasonable, a petitioner must show that "no competent counsel would have taken the action that his counsel did take." Chandler, 218 F.3d at 1315.

The Supreme Court has consistently held that "as a matter of law, counsel's conduct ... cannot establish the prejudice required for relief under the second [prong] [o]f the Strickland inquiry." Nix v. Whiteside, 475 U.S. 157, 175 (1986). This admonition emphasizes the stringent requirement that if a petitioner does not satisfy both prongs of the Strickland test, "he will not succeed on

9

an ineffective assistance claim." Zamora v. Dugger, 834 F.2d 956, 958 (11th Cir. 1987). See also Weeks v. Jones, 26 F.3d 1030, 1037 (11th Cir. 1994). Therefore, a court may resolve a claim of ineffective assistance of counsel based solely on lack of prejudice without considering the reasonableness of the attorney's performance. Waters v. Thomas, 46 F.3d 1506, 1510 (11th Cir. 1995) (citing Strickland, 466 U.S. at 697).

With regard to the second prong, the petitioner must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, at 694-95. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." Id. at 694.

**DISCUSSION**

I. Failure to Advise of Plea Offer

Petitioner contends that his counsel failed to advise him of a favorable plea agreement offered by the Government. Specifically, Petitioner stated that he learned the Government offered to allow him to plead guilty to conspiring to possess with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B). Petitioner contends that his counsel unilaterally rejected the plea offer without discussing it with Petitioner.

A defense attorney has a duty to inform his client about any

10

plea agreement proposed by the prosecution, and the failure to do so constitutes constitutionally deficient performance. <u>Diaz v. United States</u>, 930 F.2d 832, 834 (11th Cir. 1991). Even if Petitioner can show his attorney performed constitutionally deficiently, he must "establish a reasonable probability that, absent counsel's alleged ineffective assistance, he would have accepted the plea agreement." <u>Id.</u> at 835.

The Court finds that based on Petitioner's credible testimony, attorney Boothe failed to advise Petitioner of the written plea agreement offer made by the Government. The Court further finds that Boothe failed to adequately counsel Petitioner regarding the risks associated with proceeding to trial versus pleading guilty, including the potential § 851 enhancement and the possible sentences. As such, Petitioner has met the first <u>Strickland</u> prong.

Furthermore, Petitioner has shown prejudice. The Court credits Petitioner's testimony that had he been properly advised he would have accepted the Government's written plea offer. At the time of the Government's August 2008 plea offer, Petitioner faced a mandatory minimum sentence of imprisonment of 5 years to a maximum term of incarceration of 40 years. Had Petitioner been advised of the plea offer and accepted it, his base offense level would have been a 34 due to his career offender status. Had he received a three-level downward adjustment for acceptance of responsibility as provided in the proposed plea agreement, his

11

total offense level would have been 31. With a criminal history category VI, the guideline range would have been 188 to 235 months, a range of 125 to 172 months less than Petitioner's 360-month sentence. Such a significant sentencing disparity along with Petitioner's testimony that he would have pled guilty is sufficient to show prejudice. See Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003).

Notably, Petitioner was not subject to the 10-year mandatory minimum or the maximum term of life imprisonment until <u>after</u> the Government filed its § 851 notice on October 1, 2008, more than 3 months after the Indictment was filed and nearly two months after the Government proposed a plea agreement. In light of the enhancement, the offense statutory maximum increased to life imprisonment. Petitioner's offense level then became an automatic 37 pursuant to U.S.S.G. § 4B1.1(b)(A), which subjected him to a guideline sentencing range of 360 months to life imprisonment.[1] Petitioner's testified that his attorney did not discuss the § 851 notice. The Court finds that he has demonstrated that Boothe failed to explain to Petitioner that if he failed to plead guilty, the Government could seek an § 851 enhancement prior to trial and that such a notice would increase the guideline range of 360 months

---

[1] Had Petitioner pled guilty, AFTER the filing of the § 851 enhancement, and had he gotten a three-level reduction for acceptance of responsibility, his guideline range would have been 262-327 months, a range of 33 to 98 months less than Petitioner's sentence of 360 months.

to life imprisonment.

The Government contends that Petitioner has failed to demonstrate prejudice. Specifically, the Government argues that Petitioner would not have pled guilty. In doing so, the Government relies on Petitioner's testimony at the evidentiary hearing that he didn't believe he was guilty of conspiracy.

It appears Petitioner's misunderstanding of the law of conspiracy may have been based upon representations of his former counsel. As previously indicated, attorney Boothe argued at trial that Guzman was not a co-conspirator as he was never charged and that any statements from Guzman to co-defendant Jimmy Garcia, who pled to a lesser charge of misprision of a felony, could not be considered part of a conspiracy. (Cr-D-174, p. 70.) Further, in moving for a judgment of acquittal, attorney Boothe argued that the Government had failed to prove that Petitioner was a member of the conspiracy. (Id. at 91.) Attorney Boothe essentially argued that Guzman's testimony was necessary to prove conspiracy and as he did not testify, the Government failed to prove its case. He argued:

> the Government could have charged him with attempting to purchase cocaine, with attempting to traffic in cocaine, with all – there are all kinds of misprision of offense.
>
> There's all kinds of offenses they could charge him for. But they have not proved his conspiracy in this – his participation in this conspiracy, other than a secondhand information from Jimmy Garcia who said that Guzman told him he's the guy that was looking for the cocaine.

(Id. at 90-91.)

13

Similarly, at the evidentiary hearing, Petitioner explained that he didn't know his co-defendants and that he only knew Guzman. Petitioner further explained that as Guzman's charges were dropped, he didn't think he was guilty of conspiracy. Petitioner's confusion regarding the law of conspiracy is understandable under the circumstances. Regardless, Petitioner testified that he knew Guzman and that Petitioner had gone to the parking lot to purchase cocaine. He further testified that had he been properly counseled regarding the law of conspiracy and the plea agreement, he would have pled guilty. Petitioner has satisfied the second prong of the <u>Strickland</u> test..

The Court will vacate Petitioner's sentence and allow Petitioner the opportunity to plead guilty, receiving the same benefits he would have received had the plea agreement been conveyed and accepted, prior to filing the § 851 sentence.

Because the Court finds that Petitioner is entitled to relief as to his claim of ineffective assistance of counsel relating to the plea agreement, the Court does not find it necessary to address Petitioner's other claims.

IT IS THEREFORE ORDERED THAT:

1) Petitioner's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Title 28 U.S.C. § 2255 (Cv-D-1; CR-D-209) GRANTED. Petitioner's sentence in 8:08-Cr-271-T-27TGW is VACATED. Petitioner will be afforded the opportunity to

plead guilty, receiving the same benefits he would have received had the proposed plea agreement been conveyed and accepted prior to the Government filing the § 851 enhancement.

2) The Court will conduct a status hearing on 8:08-CR-271-T-27TGW on January 23, 2012 at 10:30 a.m., Courtroom TBA. At that time, the Court will determine whether attorney Hardy will remain as counsel for Petitioner or whether appointment of new counsel is necessary.

3) The Clerk is directed to enter judgment in favor of Petitioner and CLOSE this case.

DONE AND ORDERED at Tampa, Florida this 15th day of December, 2011.

_____
WILLIAM J. CASTAGNA
SENIOR UNITED STATES DISTRICT JUDGE